RECEIVED

NOV 3 2009

Nov 3 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

Peter Papaleo               )
                            )
        Plaintiff           )         C O M P L A I N T
    v.                      )
                            )
                            )         CIVIL ACTION NO. _____
**Deputy Joy** a Cook County Sheriff's   )
deputy, in his individual and      )
official capacity, **Deputy Keska**  )         09 C 6907
a Cook County Sheriff's deputy, in )         Judge Rebecca R. Pallmeyer
his individual and official capacity, )       Magistrate Judge Morton Denlow
**Deputy Goodyear** a Cook County Sheriff's )
deputy, in his individual and official )
capacity, **Deputy John Doe #1** a Cook )
County Sheriff's deputy, in his    )
individual and official capacity,  )
**Several Johnd Doe Deputies** Cook County )
Sheriff's deputies, in their individual )
and official capacities, **Sheriff Thomas** )
**Dart** the Sheriff of Cook County, in his )
official capacity and **Cook County** a )
municipal corporation, in its official )
capacity.                   )
                            )         **JURY TRIAL DEMANDED**
        **Defendants**          )

### I JURISDICTION AND VENUE

**1.)**    This is a civil action authorized by **42 U.S.C.S. §1983** to redress
the deprivation, under color of state law, of rights secured by the Constitution
of the United States.  The Court has jurisdiction under **28 U.S.C.S. § 1331 and
1343 (a) (3)**.  Plaintiff seeks declatory  relief pursuant to **28 U.S.C.S. § 2201
and 2202**.  Plaintiff's claims for injunctive relief are authorized by
**28 U.S.C.S. §2283 and §2284 and Rule 65 of the Fed. R. Civ. P.**

**2.)**    The Northern District of Illinois is an appropriate venue under
**28 U.S.C.S. §1391 (b) (2)** because it is where the events giving rise to this
claim occured.

### II PLAINTIFF

**3.)**    Plaintiff Peter Papaleo is and was at all times mentioned in this
complaint a pretrial detainee of the Cook County Department of Corrections
("CCDOC").  Plaintiff Papaleo was at all times mentioned in this Complaint under
the jurisdiction of the Bridgeview Court House, Judge McSweeny-Moore. Plaintiff
Papaleo is currently housed in the Cook County Jail ("CCJ"). Plaintiff Papaleo's
CCJ# is 2007-00-24222 and his address is P.O. Box 089002, Chicago IL 60608.

**4.)**     Plaintiff Papaleo (**"Plaintiff"**) has no aliases.  Plaintiff has
a current lawsuit pending in this Court, civil action number **09 C 2218,**
Honorable Judge Rebecca Pallmeyer, Magistrate Judge Denlow, the case is
entitled: **Joseph Hoban et al V. Tom Dart et al** .  Plaintiff has co-plaintiffs
on this suit: Joseph Hoban; Glenn Sims; and Trolus Pickett.  The defend-
ents named in this suit are: Tom Dart; Superintendent Snooks; Mr. Muler;
Mr. Godinez; New Cermak Health Services; Nurse Clay; Nurse Morrison; Nurse
Jones and Nurse Price and Cook County.  This case covers lack/denial of
medical services resulting in injury.  Plaintiff is represented by Attorneys
William J. McKenna and Lars Peterson of Foley and Lardner, LLC., of 321
North Clark Street, Suite 2800, Chicago IL. 60610.  This Honorable Court
has appointed said counsel.  Plaintiff has not been appointed criminal
representation by this Court and has no other pending lawsuits (except
as stated above) in any other federal or state court in the United States.
Plaintiff has attached an original Motion to Proceed i.f.p. outlining
his financial situation.

### III DEFENDANTS

**5.)**     Defendant Deputy Joy (**"Joy"**) is a deputy of the Cook County Sheriff's
Office and was assigned to the Bridgeview court house on the date of August
7, 2009.  Joy is employed by Cook County through the Cook County Sheriff's
Office.  Joy's duties at the Bridgeview court house include, inter alia,
maintaining security and safety for those pretrial detainees scheduled
for court on any given court day.  Joy is sued in his individual and official
capacity.  At all times mentioned in this Complaint Joy acted under color
of state law to deprive Plaintiff of rights, privileges or immunities
secured under the Constitution or laws of the United States.

**6.)**     Defendant Deputy Keska (**"Keska"**) is a deputy of the Cook County
Sheriff's Office and was assigned to the Bridgeview court house on the
date of August 7, 2009.  Keska is employed by Cook County through the
Cook County Sheriff's Office.  Keska's duties at the Bridgeview court
house include, inter alia, maintaining security and safety for those pretrial
detainees scheduled for court on any given court day.  Keska is sued in
his individual and official capacity.  At all times mentioned in this
Complaint Keska acted under color of state law to deprive Plaintiff of
rights, privileges or immunities secured under the Constitution or laws
of the United States.

**7.)**     Deputy Goodyear, also known as Deputy Goodman, herein to be named
as Deputy Goodyear (**"Goodyear"**) and the correct name will supercede any
instance of an incorrect name herein.  Goodyear is a deputy of the Cook County
Sheriff's Office and was assigned to the Bridgeview court house (as a
bailiff or court guard) specifically to Judge McSweeny-Moor's court room
on the date of August 7, 2009.  Goodyear is employed by Cook County through
the Cook County Sheriff's office.  Goodyear's duties include, inter alia,
maintaining security and safety for those pretrial detainees and court
officers, etc., scheduled to McSweeny-Moor's court room on any given court
day.  Keska is sued in his individual and official capacity.  At all times

mentioned in this Complaint Goodyear acted under color of state law to deprive Plaintiff of rights, privileges or immunities secured under the Constitution or laws of the United States.

**8.)**    Defendant John Doe #1 (**"Doe #1"**) is a deputy of the Cook County Sheriff's Office and was assigned to theBridgeview court house (as a bailiff or court guard) specifically to Judge McSweeny-Moore's court room on the date of August 7, 2009. Doe #1 is employed by Cook County through the Cook County Sheriff's Office. Doe #1's duties include, inter alia, maintaining security and safety for those pretrial detainees (and court officers, etc.) scheduled for court on any particular court day. Doe #1 is sued in his individual and official capacity. At all times mentioned in this Complaint Doe #1 acted under color of state law to deprive Plaintiff of rights, privileges or immunities secured under the Constitution or laws of the United States.

**9.)**    Defendants **"Several John Doe Deputies"** , hereinafter referred to as (**"Defendant Several John Does"**) represent a group of unknown deputies and of unknown number who are deputies of the Cook County Sheriff's Office and were assigned to the Bridgeview court house on the date of August 7, 2009. Defendant Several John Does are employed by the County of Cook through the Cook County Sheriff's Office. Defendant Several John Does duties include, inter alia, maintaining security and safety for those pretrial detainees scheduled for court on any particular day. Defendant Several John Does are sued in their individual and official capacities. At all times mentioned in this Complaint Defendant Several John Does acted under color of state law to deprive Plaintiff of rights, privileges or immunities secured under the Constitution or laws of the United States.

**10.)**    Defendant Thomas Dart (**"Dart"**) is the elected Sheriff of Cook County Sheriff's Office, Cook County Illinois. Dart has responsibility for the Cook County Sheriff's Office, etc. Dart is sued in his official capacity at this time. At all times mentioned in this Complaint Dart acted under color of state law to deprive Plaintiff of rights, privileges or immunities under the Constitution or laws of the United States.

**11.)**    Defendant Cook County is a municipal corporation where the Bridgeview court house is located and has ultimate responsibility for the Cook County Sheriff's Office. Defendant Cook County is sued in its official capacity. At all times mentioned in this Complaint Cook County acted under color of state law to deprive Plaintiff of rights, privileges or immunities secured under the Constitution or laws of the United States.

## IV INTRODUCTION

**12.)**    Plaintiff is a 45-year-old male  who has been incarcerated in the CCJ for more than 2 years. He suffers from mental illness, but is non-violent and has a very good disciplinary record at the CCJ and the Bridge-view court house. Plaintiff is semi-illeterate and is not capable of reading beyond a second grade special education level. Plaintiff's reading comprehension skills depart substantially from his second grade reading level.

**13.)**   Plaintiff is under the jurisdiction of criminal court in Bridgeview in the court room of the Honorable McSweeny-Moore. Plaintiff has never been in need of restraint nor has Plaintiff ever exhibited hostility to the Court or other detainees awaiting their appearances during Plaintiff's 2-years of appearances in this court. The same deputies mentioned earlier as defendants in this case were assigned to the Bridgeview court house for those 2-years.

**14.)**   Throughout the 2-year period Plaintiff encountered very unusual circumstances, which are important to discuss (briefly) here, during his appearances in court (Bridgeview court house). A prosecutor at Plaintiff's bond hearing made false allegations concerning the nature of Plaintiff's case (and may have padded Plaintiff's case) which were later found to be false statements through discovery. However, Plaintiff's bond remained outrageous. Plaintiff's trial judge was replaced by Plaintiff's bond hearing Judge (Judge McSweeny-Moore) and Plaintiff requested his lawyers to change judges or venue since Judge McSweeny-Moore was the bond judge and listened and acted upon false information. Plaintiff pointed out to his lawyers that Judge McSweeny-Moore made certain comments at Plaintiff's bond hearing which Plaintiff states were such that it appeared that Judge McSweeny-Moore appeared to have 'pre-convicted' Plaintiff based on the tainted information provided to her at the bond hearing.

**15.)**   Plaintiff's lawyers did not move or motion to change venue at Plaintiff's request and did not file any motions nor present any motions, did not develop a trial strategy and did not provide an accounting of the fee paid to them by family members. Plaintiff's lawyers did not send investigators to interview and obtain statements from important witnesses and those witnesses have since moved and cannot be located (said witnesses having important information that contribute to Plaintiff's innocence). Plaintiff sent several certified letters to his attorneys (which were written by a fellow pretrial detainee on behalf of Plaintiff) requesting this and additional information and Plaintiff's lawyers did not respond to any of these letters nor did they address such issues in personal visits.

**16.)**   As Plaintiff affirms his innocence and has forensic evidence to support his innocence he became very upset with his lawyers. This final straw for Plaintiff was when of Plaintiff's lawyers encouraged or admonished Plaintiff to lie under oath concerning an issue of photographs. At this point Plaintiff lost all confidence in his attorneys.

**17.)**   Plaintiff filed an ARDC report with the Illinois Supreme Court with approximately 30 pages of evidence and ARDC opened an investigation. Plaintiff was then called to the Bridgeview court house on August 7, 2009 because his lawyers decided to file a motion to withdraw from Plaintiff's case, which they did, and have not refunded any of the payment made to them even though they were paid in advance. Also noteworthy is the fact that Plaintiff's lawyers only submitted **one** page out of **thirty** pages of the ARDC complaint in some way to trick the judge into granting this motion to withdraw. This situation stated here in addition to the horrible conditions of the CCJ-especially Plaintiff's lack/denial of medical treatment (Plaintiff's case # 09 C 2218)-combined together to create great feelings of angst and dispair in Plaintiff. We now turn to the events of August 7, 2009 giving rise to the facts of this complaint.

## V  FACTS

**18.)**  Plaintiff was brought to the Bridgeview court building on August 7, 2009 by the CCJ's transportation unit with other pretrial detainees scheduled for court on this date.  Plaintiff was not scheduled for court on this day, however.

**19.)**  Plaintiff met with is attorneys (in a holding cell of the Bridgeview court house) who informed Plaintiff that they were going to withdraw from Plaintiff's case because Plaintiff had filed a complaint against them with ARDC.  Plaintiff indicated that his father was entitled to a partial refund, "..since you guys really didn't do anything at all since you had my case for the last 1 and ½ years, [approximately]...".

**20.)**  Plaintiff was then called before Judge McSweeny-Moore.  Upon entering the court room Plaintiff saw his lawyers laughing among themselves.  Plaintiff concluded that they were laughing at him.

**21.)**  Judge McSweeny-Moore asked Plaintiff is he had in fact filed the complaint with ARDC and showed Plaintiff only one page that Plaintiff's lawyers presented for their motion to withdraw.  The ARDC complaint consisted of approximately 30 pages of evidence containg letter and U.S.P.S. receipts for certified mail, inter alia, and one additional statement from Plaintiff's father, Ken Papaleo.  Judge McSweeny-Moore was not presented with the complete ARDC filing made by Plaintiff.

**22.)**  Judge McSweeny-Moore and Plaintiff's lawyers began to laugh among themselves (which reinforced Plaintiff's idea that everyone involved with this proceeding was laughing at him).  The Judge then granted Plaintiff's lawyers their motion to withdraw.  Plaintiff, feeling helpless and lost in the maze of legal complexity, made comments in a loud voice that the proceeding was corrupt and that corruption was evident in the court.  Judge McSweeny-Moore asked the court guards to remove Plaintiff from the court room, and knowing that Plaintiff suffers from mental illness, also ordered Plaintiff to undergo a psychological examination upon his return to the CCJ.

**23.)**  Deputies Goodyear and Doe #1 (guards in the court room) walked Plaintiff out of the court room, peacefully, and placed him in a holding cell by himself because Plaintiff was visibly upset.  Plaintiff was not handcuffed in the court room and was not handcuffed when escorted from the court room.  Plaintiff was placed in a holding cell by **himself** and was not handcuffed at that time.

**24.)**  Plaintiff was so upset and frustrated that he began to talk to himself and yell in the holding cell.  Upon information and belief Plaintiff could not be heard by the court.  At this juncture Goodyear and Doe #1 rushed into the holding cell where Plaintiff was and roughed him up and placed handcuffs on Plaintiff behind his back.  Plaintiff was not resisting. Doe #1 placed the handcuffs on Plaintiff as tight as possible which caused excruciating pain to Plaintiff's wrists and also aggravated pain in Plaintiff's right little finger which was broken at that time.

**25.)** Doe #1 then pushed Plaintiff, with extreme force, into the elevator floor, head first, slamming Plaintiff's head on the floor of the elevator, causing extreme pain to Plaintiff's head and neck. Plaintiff was calling for help and Plaintiff's Mother and Father were able to hear their son calling for help; Plaintiff's Mother became very emotional and left the court room. Doe #1 is described as a very large male weighing approximately 250 pounds. Plaintiff attempted to stand up in the elevator but could not. Plaintiff was then pushed to the elevator floor by Doe #1 who then placed his knee on Plaintiff's back with all his weight causing more pain and agony to Plaintiff. As this was taking place in the elevator (**noteworthy is the fact that deputies of the Sheriff's office and other police officers usually beat men and women in elevators**) Plaintiff was continuing to call for help when Goodyear stated, "Why are you yelling for help? No one's going to come." Doe #1 continued to shift his enormous weight onto Plaintiff's back while Plaintiff was calling for help. (Note: The elevator is used to bring pretrial detainees from the basement to the court room of the Bridgeview court house building. Plaintiff was at this time being transported back to the basement.)

**26.)** When the elevator doors opened in the basement Plaintiff was attacked by several deputies. These deputies rushed into the elevator and dragged Plaintiff into a hallway and they began punching and kicking Plaintiff. These officers picked Plaintiff up and began to violently slam his head into concrete walls and rendered Plaintiff unconscious. (It will be established later that Joy was one of the wring-leaders of this attack and an active participant (in addition to the other named defendants in this suit) in beating Plaintiff.

**27.)** Plaintiff has no recollection of what happened after he was beaten unconscious by the defendants but when Plaintiff did regain consciousness he was being dragged across a floor by his feet and handcuffs and was then lifted and thrown, violently, onto a hard concrete floor of a holding cell, head first. As Plaintiff regained some of his faculties he found that he was in a cell by himself and unable to move.

**28.)** Plaintiff lay on the floor for approximately half an hour. Plaintiff was dizzy and had severe pain in his head and neck. Plaintiff also felt severe throbbing pain in his right ribs and as Plaintiff attempted to yell for medical attention he experienced severe, acute pain in his right ribs and was not able to yell loudly for medical attention. Plaintiff's hands grew numb and he lay there in pain helpless. Plaintiff felt the handcuffs cutting into his wrists. Slowly Plaintiff regained mobility but was extremely disoriented. Plaintiff began to ask for medical attention.

**29.)** Approximately half and hour later a deputy entered the holding cell and asked Plaintiff if he would like the handcuffs removed to which Plaintiff said that he would since they were causing extreme pain and his hands were feeling numb. Plaintiff again requested medical attention due to the severe pain in his neck, right ribs, hands and feet. Plaintiff was having difficulty breathing deeply and speaking. **Exhibit A** confirms this.

**30.)** Paramedics were called for Plaintiff. A deputy ordered Plaintiff

to walk to the ambulance but Plaintiff was unable to walk.  Plaintiff
was extremely dizzy, in severe pain, and was having difficulty speaking.
Plaintiff felt as if he were drifting in and out of consciousness.

**31.)**  Paramedics entered the holding cell where Plaintiff was laying
and inspected him.  The paramedics concluded that Plaintiff could not
walk and was placed on a stretcher with a neck brace and was driven
to the hospital in an ambulance.  During the ride to the hospital one
of the paramedics, a female, possibly Angelina Larks (from the attached
medical records, **Exhibit A**, page 6 of 6) asked Plaintiff some questions
concerning the assault and Plaintiff's injuries.  She noticed that
Plaintiff was slurring his speech as he answered.  This paramedic asked
Plaintiff if he was drunk.  Plaintiff indicated that he was not drunk
and asked the paramedic why she said this.  She responded that Plaintiff
was slurring his speech to which Plaintiff responded that he had been
severly beaten and rendered unconscious by deputies and was suffering
from severe pain in his head and neck, right ribs, inter alia.

**32.)**  Plaintiff arrived at the hospital, Advocate Health Care, Advocate
Christ Medical Center, 4440 West 95th Street, Oak Lawn, Illinois 60453,
**Exhibit A**, page 1 of 6.  X-rays showed that Plaintiff had bruised ribs.
However, unusual as it may seem doctors did not authorize a CAT scan
of Plaintiff's head or neck.  Deputy Joy was informing medical staff,
within earshot of Plaintiff, that Plaintiff is a "crazy person" and
that Plaintiff is "faking" and that "nothing happened" to which an
RN informed Joy that Plaintiff was in fact seriously injured.  Plaintiff
was prescribed pain medication and was released from the hospital a
few hours later. (The RN who spoke with Joy in earshot of Plaintiff
was either Rebecca Meck or Ann Gruber, **Exhibit A**, page 6 of 6).

**33.)**  After arriving back at the Bridgeview court house Plaintiff was
again placed into a cell by himself awaiting the CCJ transport to return
Plaintiff to the CCJ.

**34.)**  Defendant Joy began to antagonize Plaintiff by saying, "Look
at me, I'm the one that did this to you" while simultaneously waving
his (Joy's) official name tag in Plaintiff's face so that Plaintiff
would remember Joy's name.  Furthermore Joy threatened Plaintiff that,
"Next time I'm **really** [emphasis in original] going to put you in the
hospital."  Plaintiff was then transported to the CCJ.   Noteworthy
is the fact that Joy, Keska, Doe #1 and Several John Doe Deputies
were aware that Plaintiff was a non-violent, non-confrontational, peaceful,
mentally ill pretrial detainee.  The actions of these deputies are
nothing less than wanton acts of malicious police brutality.

**35.)**  Upon returning to the CCJ, Plaintiff's tier, (CCJ division 10
2nd floor, tier 2-C) Plaintiff explained to officers what had happened
to him and that he was experiencing tremendous pain in his head, neck,
back right ribs and right, small finger.  Plaintiff also continued
to feel dizzy, disorientated and motions and voices in his environment
seemed surreal and dreamlike.  Officers of tier 2-C immediately transported
Plaintiff to the 2nd floor dispensary unit.  Nurses were concerned
about Plaintiff's head injuries and symptoms.  Plaintiff was then ordered
by nurses in the 2nd floor dispensary of division 10 to be transported
to the emergency room in Cermak Hospital.

**36.)**  Before leaving division 10 Plaintiff's injuries were video recorded by security staff of division 10.  This video was made on August 7, 2009 during 2nd shift.  Officers informed Plaintiff that if Plaintiff needs this video it can be obtained by subpoena.  This video will  show, inter alia, cuts on Plaintiff's  wrists and arms and various other injuries including Plaintiff's obvious state of mind.

**37.)**  After arrival at Cermak ER Plaintiff was given a prescription for Tylenol III (3) for pain.  Plaintiff was scheduled for a CAT scan of his head and neck area for the following day.  Doctors ordered that Plaintiff spend the night in the Cermak ER in order to be monitored by nurses; which Plaintiff did.  Plaintiff was discharged from the ER on August 8, 2009 at approximately 6:00AM.  Plaintiff was again called to Cermak Health Services at approximately 7:30AM, August 8, 2009 for additional tests, CAT scans, etc.

**38.)**  Plaintiff suffered greatly during the malicious and cowardly beating he was subjected to by deputies at the Bridgeview court house. Plaintiff was forced to endure additional pain of handcuffs so tightly fastened to his wrists that they cut into his skin.  Plaintiff has no feeling in his left or right thumbs.  Plaintiff continues to suffer from pain in his right ribs, and as noted in the attached hospital report, **Exhibit A,** Plaintiff continues to have problems taking deep breaths.  Plaintiff is experiencing additional psychological disturbances including horrible nightmares that wake Plaintiff's cellmate, **Exhibit B.**  Plaintiff feels fear, angst, foreboding and dread upon each court date to Bridgeview, as well as nervous stomach and loose bowels, because Joy has threatened him, "I'm really going to put you in the hospital next time."  Plaintiff has experienced humiliation and is currently suffering mental anguish and symptoms of Post Traumatic Stress Disorder (PTSD) characterized by nightmares, intrusive thoughts, memories and images, anxiety, irritability, poor concentration and memory, exaggerated startle response and hyper-vigilance.  Plaintiff was also physically and mentally disoriented for approximately 3 weeks.  Plaintiff now turns to federal district court for relief.

## VI EXHAUSTION

**39.)**  There is no administrative remedy process available to Plaintiff in this situation form the CCJ.

**40.)**  Plaintiff's father, Kenneth Papaleo, filed a complaint with the Internal Affairs Inspector General, Complaint Register, **Exhibit C** on behalf of Plaintiff.  No official action has been taken as of the date (below) of this  Complaint (to Plaintiff's knowledge).

**41.)**  The security, medical and psychological issues mentioned in this Complaint remain ongoing.  It is likely that Plaintiff will be beaten a second time, more seriously, when the opportunity affords itself based on Joy's threats (which Plaintiff considers serious and concrete based on Joy's previous involvement in the beating of Plaintiff).  Plaintiff has suffered and continues to suffer physical, emotional and psychological harm as outlined above. The issues in this Complaint remain ongoing.

## VII. STATEMENT OF CLAIM

**42.)** Plaintiff realleges and incorporates by reference paragraphs
1 - 41 above.

**43.)** Plaintiff was peacefully escorted from Judge McSweeny-Moore's
court room per her instructions to Goodyear and Doe #1. Plaintiff
did not require handcuffs. Plaintiff was placed in a holding cell
by himself and posed no threat to any other pretrial detainees. Goodyear
and Doe #1 were aware that Plaintiff is a non-violent and obedient
mental patient. While in the holding cell, alone, Plaintiff began
to talk to himself regarding his situation which is his First Amendment
Right to speak freely and to petition an agent of the government for
redress of grievances. Plaintiff was not being disrespectful or resorting
to obscenity.

**44.)** Goodyear and Doe #1 rushed into the holding cell where Plaintiff
was housed and 'roughed him up' and placed handcuffs on him behind
his back. Doe #1 was excessively aggressive, handcuffed Plaintiff
very tightly and threw Plaintiff head first onto the elevator floor.
Plaintiff was crying for help and Plaintiff's mother and father heard
this from their seat in the courtroom of Judge McSweeny-Moore, before
the elevator doors closed. Note: Plaintiff's cries for help were able
to be heard in the court room because Plaintiff was no longer in the
cell but was now out of the cell and could be heard loudly enough in
the court room. Plaintiff's mother began to cry helplessly. Doe #1
was aware that Plaintiff is a mentally ill and peaceful person. Plaintiff
was not resisting. Doe #1 acted with excessive force and continued
to purposefully hurt Plaintiff by placing his knee on Plaintiff and
pushing his approximately 250-pound body onto Plaintiff. Doe #1 had
no reason to act this way. Doe #1 acted maliciously and with intent
to purposefully harm Plaintiff. Doe #1 acted with deliberate indifference
to Plaintiff's 14th Amendment Rights secured to him by the United States
Constitution. Doe #1 injured Plaintiff.

**45.)** Joy, Keska and Doe #1 began to slam Plaintiff's head into concrete
walls, when the elevator reached the basement, and to punch Plaintiff
in his body with closed fists and also to kick Plaintiff with military-
style combat boots. At some point Defendant **Several John Doe Deputies**
joined in a cowardly free-for-all beating of Plaintiff who was handcuffed
behind his back. Plaintiff remembers being slammed into a concrete
wall, head first, and knocked unconscious. Upon regaining consciousness
Plaintiff was shackled at his ankles and was being half-drug and half-carried
to a holding cell where he was lifted and thrown onto a concrete floor.
Defendant's Joy, Keska, and Doe #1 led this cowardly and unnecessary
attack which is an obvious assault and is a criminal act. Joy, Keska,
Doe #1, Goodyear and **Several John Doe Deputies** acted with eliberate
indifference to Plaintiff's 14th Amendment Rights secured to him by
the United States Constitution and caused Plaintiff bodily harm. Plaintiff
was not a threat. Defendants were not dealing with a rapidly developing
situation. Plaintiff was not resisting. Joy, Keska, Doe#1 and **Several
John Doe Deputies** acted maliciously and with intent to harm Plaintiff.

**46.)** Defendants **Several John Doe Deputies** joined a free-for-all assault
against Plaintiff spearheaded by Joy and Keska. This assault agaist
Plaintiff was cowboy justice, cowardly, and served to provide entertainment
for themselves and led to Plaintiff's physical injuries. Defendant

**Several John Doe Deputies** were not needed to subdue or assist in gaining control of the situation because Plaintiff was not resisting and 4 deputies, including one of approximately 250 pounds (Doe #1) were obviously capable of controlling Plaintiff. Moreover, Plaintiff was handcuffed very tightly behind his back and could not have resisted even if he intended to do so.

**47.)** Defendants Goodyear, John Doe #1, Joy, Keska and Defendants **Several John Doe Deputies** violated Plaintiff's 14 Amendments rights to be free from harm, punishment, etc., of procedural due process through an act, omission, culture, practice and or policy in their individual and official capacities placing Plaintiff at great risk of harm and harmed Plaintiff by beating him untill he was unconscious and bruising Plaintiff's ribs. These defendants hospitalized the Plaintiff in this matter which is a very serious situation. This attack was unecessary. That approximately 8 or more deputies, sworn officers of the law, entrusted by the taxpayers to uphold the law, jumped and beat a non violent, non resisting, heavily medicated mentally ill pretrial detainee is diabolical, dispicable, discusting and demonic. Their acts rise to the level of cruel and unusual punishment.

**48.)** Defendant Joy and Keska, in an additional sadistic act which further exemplifies their lawlessness, allowed Plaintiff to lay handcuffed (as tightly as possible so that the handcuffs cut into Plaintiff's wrists – and these injuries are not to be construed as in indicator of resisting – ) in pain, semi-unconscious on a hard, cold concrete floor for approximately :30 minutes. These acts not only rise to the level of cruel and unsusual punishment but surpass it and enter the realm of torture. Defendants Joy and Keska were aware that they had hurt Plaintiff. Joy and Keska were aware that Plaintiff was in pain. Joy, Keska, Doe #1, Goodyear and **Several John Doe Deputies** were aware that their acts were unwarranted, yet they all acted maliciously, with intent for the exclusive purpose to inflict pain on Plaintiff.

**49.)** Nor or Joy's, Keska's, Goodyear's and **Several John Doe Deputies'** acts singular. Upon information and belief many pretrial detainees are beaten by deputies at the Bridgeview court house and are sent to Advocate Health Care, Advocate Christ Medical Center and an exploration of such records would be very interesting. Joy, Keska, Goodyear, Doe #1 and **Several John Doe Deputies** acts are not singular, demonstrating a culture of abuse of pretrial detainees and supporting an official capacity claim. Moreover, Plaintiff was beaten on two other ocassions without provication by the Cook County Sheriff's deputies which shows this beating policy to be a department-wide custom culture, practice and or policy. (Plaintiff was beaten by deputies for a confession and after being placed at the CCJ was beaten again by deputies in RCDC Divison 5 of the CCJ for no other reason than for the nature of Plaintiff's charges.) Furthermore, Joy stated to Plaintiff that Joy had did this to him and next time would really put Plaintiff in the hospital and this not only shows intent but is a crime within itself under Illinois law. The defendants thus far mentioned trampled across Plaintiff's Constitutional rights to be free from punishment without procedural due process and to be free from harm and to have equal protection under the law (Plaintiff is a mentally ill person and therefore is considered a minority by that classification) which are secured protections under the 14th Amendment of the United States Constitution.

**50.)** Defendant **Goodyear** is a putative friend of the Papaleo family. When Kenneth Papaleo spoke with family members concerning this incident Goodyear states that Plaintiff had beat himself (by himself) and had knocked himself unconscious and the deputies did nothing at all. This is an outlandish claim and shines light on the character of Goodyear and his fellow deputies and also speaks loudly as to their veracity. Rhetorically, Did Plaintiff also beat himself on his lower right ribs and bruise those ribs while handcuffed behind his back? No.

**51.)** Defendant **Thomas Dart** is sued in his official capacity to provide the names of all John Doe Deputies mentioned above and also to clarify the name of Goodyear. Dart may also need to provide other evidence which may be needed by Plaintiff in the future. The office of the Sheriff of Cook County has this authority. The Sheriff, Thomas Dart has this authority.

**52.)** Defendant **Cook County** ("Cook") is sued in its official capacity. Cook is aware of the abuses by deputies of the Cook County Sheriff's Office but does nothing to correct this problem. Plaintiff has filed two different reports (complaints) with the Inspector General's office concerning two different dates. Upon information and belief Plaintiff's family may have also filed a complaint (a third) with the Internal Affairs Office concerning a beating administered to Plaintiff by Cook County Deputies in the Maywood station on Plaintiff's arrest in order to extract an illegal confession. Also, Cook is aware of excessive use of force complaints against other officers by citizens and pretrial detainees of Cook County from previous and current law suits and local media coverage. Cook has acted with deliberate indifference to Plaintiff's 14th Amendment rights to be free from punishment without procedural due process, free from harm and to have equal protection under the law (Plaintiff is mentally ill) but through an act, omission, culture, practice and or policy has violated Plaintiff's constitutional rights and placed him at great risk of harm, and harmed Plaintiff.

**53.)** Plaintiff has shown an affirmative link between allegations in this Complaint and all named defendants. The actions of all named defendants are not singular.

### VIII PRAYER FOR RELIEF

**54.)** **WHEREFORE, PLAINTIFF** respectfully prays that this Court will enter judgement granting Plaintiff:

**55.)** A declaration that the acts and omissions described above violated Plaintiff's rights under the Constitution and laws of the United States.

**56.)** A preliminary and permanent injunction ordering Defendants to cease and desist AND to proactively move to correct the Constitutional wrongdoings elucidated in this Complaint.

**57.)** Compensatory damages in an amount to be determined by this Honorable Court.

**58.)** **Punitive** damages in an amount to be determined by this Honorable Court.

**59.)** A jury trial on all issues triable by jury.

**60.)** All applicable attorney's fees.

**61.)** Plaintiff's costs in this suit.

**62.)** Any additional relief this Honorable Court deems just, proper and equitable.

Dated 10-8-09

Respectfully Submitted

Peter Papaleo

Peter Papaleo
2007-00-24222
P.O. Box 089002
Chicago IL 60608

(Cook County Jail)

– 12 –

# V E R I F I C A T I O N

I, PETER PAPALEO, HAVE READ THE FOREGOING COMPLAINT AND HEREBY VERIFY THAT THE MATTERS ALLEGED THEREIN ARE TRUE, EXCEPT AS TO MATTERS ALLEGED UPON INFORMATION AND BELIEF, AND AS TO THOSE, I BELIEVE THEM TO BE TRUE AND CORRECT.

EXECUTED AT CHICAGO, ILLINOIS UNITED STATES OF AMERICA ON:

THE DATE OF: 10 - 8 - 09

                                                    PETER PAPALEO

_Peter Papaleo_ (SIGNATURE)
Peter Papaleo

Peter Papaleo
2007-00-24222
P.O. Box 089002
Chicago IL 60608

### Page 13

**There are exactly 13 pages in this Complaint
(not including the attached evidence)**

**END OF DOCUMENT**

EXHIBIT A-1

# Advocate Health Care

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| | |
|---|---|
| **Document Name:** | ER Chart |
| **Result Date:** | 8/7/2009 12:17:00 PM |
| **Result Status:** | Unauth |

REPORT
HPI BLANK (13:12 JS47)
CHIEF COMPLAINT: 46 y/o M presents with right rib pain and
  headache. Per pt. he was in court today when he got angry and was
  physically restrained by officers in the court. While being restrained
  he reports hitting his head on the elevator with LOC for 2 sec, as well
  as falling onto his right chest and back and sustaining blows in that
  location as well. Per officers at the seen, pt. did not lose
  consciousness at any point during the event. He reports no vomiting or
  confusion, or recent illness. .
HISTORIAN: History obtained from patient, History obtained from
  police.

ROS (13:13 JS47)
CONSTITUTIONAL: No fever, No chills.
EYES: No vision changes.
ENT: No rhinorrhea.
CARDIOVASCULAR: No chest pain.
RESPIRATORY: No Cough, No SOB.
GI: No abdominal pain, No diarrhea, No vomiting.
MUSCULOSKELETAL: Historian reports back pain, Historian reports
  fall, Historian reports injury.
SKIN: No rash.
NEUROLOGIC: Historian reports headache, No lethargy, No
  paresthesias, No focal weakness.
ENDOCRINE: No skin changes.
PSYCHIATRIC: Historian reports depression, Historian reports
  anxiety, No drug abuse, No alcohol abuse.

HISTORY (13:14 JS47)
MEDICAL HISTORY: No past medical history.
SURGICAL HISTORY: Right shoulder GSW
  Right thoracotomy.
SOCIAL HISTORY: Denies drug, alcohol, or tobacco abuse.
FAMILY HISTORY: Family history is not contributory to this case.
PSYCHIATRIC HISTORY: History of depression, History of anxiety.

PHYSICAL EXAM (13:16 JS47)
CONSTITUTIONAL: Vital signs reviewed, Comfortable, Alert and
  oriented X 3.
HEAD: Atraumatic, Normal cephalic.

| Low = L | High = H | Abnormal = A | Critical = C | Comment = * | Corrected/Amended = c |
|---|---|---|---|---|---|
| **Print Date/Time:** 8/10/2009: 12:53:41 PM | | | | **Patient Name:** PAPALEO, PETER | |
| **Printed By:** Vicario, Rose M | | | **CONFIDENTAL** | **Sex:** MALE  **MRN:** CMC-001237845 | |
| **Chart Request ID:** 28669556 | | | | **DOB:** 7/25/1963 **FIN:** 543592810 | |
| | | | | **Page 1 of 6** | |

10

## Advocate Health Care

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| Document Name: | ER Chart |
|---|---|
| Result Date: | 8/7/2009 12:17:00 PM |
| Result Status: | Unauth |

EYES: Pupils equal and reactive to light, No discharge from eye,
  Sclera normal, Extraocular muscles intact, Conjunctiva are normal.
ENT: Ears normal to inspection, Nose examination normal,
  Oropharynx normal, Mucous membranes pink, moist, normal in color.
NECK: Normal ROM, No jugular venous distention, No meningeal
  signs, Cervical spine non-tender.
RESPIRATORY/CHEST:  tenderness right anterior and posterior chest
  to palpation. Deep Insipiration limited due to pain. Breath sounds
  clear.
CARDIOVASCULAR: RRR, Heart sounds normal, No extremity edema.
ABDOMEN: Abdomen is non-tender, No masses, Bowel sounds normal,
  No distension, No peritoneal signs.
BACK: Normal inspection, No midline tenderness, tenderness over
  right paraspinal area and ribs. .
UPPER EXTREMITY: Inspection normal, No cyanosis/clubbing/edema.
LOWER EXTREMITY: Inspection normal, No cyanosis/clubbing/edema,
  No calf tenderness.
NEURO: Motor exam normal.
SKIN: Skin is warm and dry, No rash or induration.
PSYCHIATRIC: Oriented X 3, Normal affect.

DOCTOR NOTES (21:36 JS47)
TEXT:  imp/plan: likely bruising over right ribs. No evidence of
  other serious injury at this time. Plan to discharge with motrin as
  needed for pain.

CURRENT MEDICATIONS (13:28 AP)
clonidine, ?htn pill, ? cholesterol pill
prozac

VITAL SIGNS
VITAL SIGNS: BP: 0/0, Pulse: 0, Resp: 0, Temp: 0, Pain: 0, O2
  sat: 0, Time: 8/7/2009 12:16. (Fri Aug 07, 2009 12:17 RAM)
 BP: 118/73, Pulse: 71, Resp: 18, Temp: 36.1 ORAL, Pain: 5, O2 sat: 98 on
  RA, Time: 8/7/2009 12:39. (12:44 AP)
 BP: 135/88, Pulse: 67, Resp: 20, Time: 8/7/2009 14:54. (14:55 ALL)
 BP: 128/80, Pulse: 72, Resp: 18, Pain: 4, Time: 8/7/2009 15:00. (15:01
  AP)

PRESCRIPTION (15:23 JS47)
Ibuprofen:  Capsule : 200 Mg : Oral=Quantity: *** 2 *** Unit:

| Low = L | High = H | Abnormal = A | Critical = C | Comment = * | Corrected/Amended = c |
|---|---|---|---|---|---|
| Print Date/Time: 8/10/2009: 12:53:41 PM | | | | Patient Name: PAPALEO, PETER | |
| Printed By: Vicario, Rose M | | CONFIDENTAL | | Sex: MALE MRN: CMC-001237845 | |
| Chart Request ID: 28669556 | | | | DOB: 7/25/1963 FIN: 543592810 | |
| | | | | Page 2 of 6 | |

EXHIBIT A-3

# Advocate Health Care

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| Document Name: | ER Chart |
|---|---|
| Result Date: | 8/7/2009 12:17:00 PM |
| Result Status: | Unauth |

tabs Route: Oral Schedule: 4 times a day Dispense: *** 30 ***.
NOTES:
No refills
May substitute
DEA:
MLN:

RESULTS (15:16 LC6)
XR RIBS RT 2V Fri Aug 07, 2009 13:55,

CLINICAL INFORMATION: Trauma.
FINDINGS: Two projections of the right ribs reveal the osseous structures
to
appear intact. There is no evidence of fracture or destructive change.
Pleural
reaction is noted along the right lateral ribs which correlated with
markers
placed on the inferior posterolateral ribs is remote from the trauma
site.
Correlation with clinical findings is recommended
IMPRESSION:
1. No evidence of fracture.
2. Extrapleural thickening on the right lateral chest of unknown
significance.
**** F I N A L ****
Transcribed By: TP
08/07/09 2:33 pm
Dictated By:        BENVENISTE-MD, JOEL MD
Approved By:        BENVENISTE-MD, JOEL MD  08/07/09 2:33 pm .

NURSING PROCEDURE: ROUNDING (14:55 ALL)
TIME: Procedure performed at: 1450, Comfort: Safe environment,
Comfort: Patient Content/Comfortable, Comfort: Assistance offered to
patient, Comfort: Blanket/pillow given to patient, Toileting: Offered,
Toileting: Not needed, Toileting: Ambulated to bathroom without
assistance.
SAFETY: Side rails up, Cart in lowest position, Call light within
reach, REPEAT VITALS.
VITALS: BP: 135, / 88, Pulse: 67, Resp: 20.

| Low = L | High = H | Abnormal = A | Critical = C | Comment = * | Corrected/Amended = c |
|---|---|---|---|---|---|
| **Print Date/Time:** 8/10/2009: 12:53:41 PM | | | | **Patient Name:** PAPALEO, PETER | |
| **Printed By:** Vicario, Rose M | | | **CONFIDENTAL** | **Sex:** MALE  **MRN:** CMC-001237845 | |
| **Chart Request ID:** 28669556 | | | | **DOB:** 7/25/1963  **FIN:** 543592810 | |
| | | | | | Page 3 of 6 |

*EXHIBIT A-4*

✚ *Advocate Health Care*

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| Document Name: | ER Chart |
|---|---|
| Result Date: | 8/7/2009 12:17:00 PM |
| Result Status: | Unauth |

NURSING PROCEDURE: ROUNDING (15:29 BK14)
TIME: Comfort: Safe environment, Comfort: Patient
  Content/Comfortable, Comfort: Assistance offered to patient, Toileting:
  Not needed, Oxygen Tank Checked for: Not applicable.

NURSING PROCEDURE: ROUNDING (15:29 BK14)
SAFETY: Side rails up, Cart in lowest position.

NURSING PROCEDURE: DISCHARGE NOTE (15:33 JAR)
TIME: Patient discharged to home, Patient ambulates without
  assistance, Transported via guardian/supervisor,
  Patient is alert and orientated, Vital signs have been rechecked within
  the last hour, Discharge instructions given to patient, Above Person(s)
  verbalized understanding of discharge instructions and follow-up care.
GLASCOW COMA SCALE ADULT: GCS Eye Opening: Spontaneously (4), GCS
  Verbal Response: Oriented/conversive (5), GCS Motor Response: Obeys
  comands(6), The GCS total is 15.

NURSING PROCEDURE: MEDICATION (15:36 JAR)
MEDICATION: Ibuprofen, 600 mg, given PO.

TRIAGE (Fri Aug 07, 2009 12:17 RAM)
PATIENT: NAME: Amb Bridgeview, AGE: 46, GENDER: male, DOB: Fri
  Feb 01, 1963, LANGUAGE: English, Isolation: Standard.
ADMISSION: URGENCY: 3, ADMISSION SOURCE: Other, TRANSPORT:
  Bridgeview FD, BED: GCF 23.
VITAL SIGNS: BP 0/0, Pulse 0, Resp 0, Temp 0, Pain 0, O2 Sat 0,
  Time 8/7/2009 12:16.
COMPLAINT: COMPLAINT: rib pain/headache.
PAIN
ADDITIONAL INFORMATION: ECRN radio communication received,
  patient has not yet arrived in ED.

KNOWN ALLERGIES
  No known allergies.

ALLERGY (13:28 AP)
  No Known Allergies.

NURSING ASSESSMENT: FOCUSED (12:44 AP)
COMPLAINT: PT ARRIVES TOT HE ER FROM JAIL. PT APPEARED IN COURT

| Low = L | High = H | Abnormal = A | Critical = C | Comment = * | Corrected/Amended = c |
|---|---|---|---|---|---|
| **Print Date/Time:** 8/10/2009: 12:53:41 PM | | | | **Patient Name:** PAPALEO, PETER | |
| **Printed By:** Vicario, Rose M | | **CONFIDENTAL** | | **Sex:** MALE **MRN:** CMC-001237845 | |
| **Chart Request ID:** 28669556 | | | | **DOB:** 7/25/1963 **FIN:** 543592810 | |
| | | | | Page 4 of 6 | |

*EXHIBIT A-5*

**✚ Advocate Health Care**

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| | |
|---|---|
| **Document Name:** | ER Chart |
| **Result Date:** | 8/7/2009 12:17:00 PM |
| **Result Status:** | Unauth |

TODAY AND DISRUPTED THE COURT AND WAS RESTRAINTED PER PD. PT ARRIVES
STATED THAT HE WAS THROWN AND KNEED IN THE HEAD. PT C/O HEADACHE AND
RIB PAIN. PT ALSO SAYS THAT IT IS "HARD TO TALK".
WEIGHT/HEIGHT: Weight: 86, . 1, Kg , Height: 65, inches.
VITAL SIGNS: BP: 118, / 73, Pulse: 71, Resp: 18, Temp: 36.1 ORAL,
Pain: 5, O2 sat: 98, RA.
MENTAL STATUS: Orientation: Alert, Oriented, Behavior:
Cooperative.
SKIN: Skin is warm.
BELONGINGS: Patient has the following belongings and valuables
with him/her.

NURSING ASSESSMENT: NURSES NOTE (15:01 AP)
TIME ASSESSED: pt resting on the cart. pd at the cartside to
monitor handcuffs.
VITAL SIGNS: BP: 128, / 80, Pulse: 72, Resp: 18, Pain: 4.

ADMIN
PATIENT DATA CHANGE: Primary Nurse changed from (none) to Ann
Gruber, RN. (12:19 AP)
Resident changed from (none) to Jessica Sinnott, RESIDENT. (12:36
JS47)
A08 2009080712463040 by Interface, Home Phone: (773)625-0131.
(12:46)
Attending changed from (none) to Lamont Clay, MD. (13:01 LC6)
Primary Nurse changed from Ann Gruber, RN to Jeffrey Redican, RN. (15:31
JAR)

INSTRUCTION (15:33 JAR)
DISCHARGE: RIB CONTUSION.
FOLLOWUP: . Referral Line, Adminnistration, CALL
1-800-3ADVOCATE, IF YOU HAVE ANY TROUBLE, GETTING A FOLLOW-UP,
APPOINTMENT. .
SPECIAL: You may take motrin for pain as needed.
Return to the ER for any new concerns, or worsening headache, passing
out, or vomiting. .

DISPOSITION
PATIENT: Disposition: Discharged, Condition: Stable. (15:20
JS47)
Remove from ER. (15:38 JAR)

| Low = L | High = H | Abnormal = A | Critical = C | Comment = * | Corrected/Amended = c |
|---|---|---|---|---|---|
| **Print Date/Time:** 8/10/2009: 12:53:41 PM | | | | **Patient Name:** PAPALEO, PETER | |
| **Printed By:** Vicario, Rose M | | | **CONFIDENTAL** | **Sex:** MALE  **MRN:** CMC-001237845 | |
| **Chart Request ID:** 28669556 | | | | **DOB:** 7/25/1963 **FIN:** 543592810 | |
| | | | | | Page 5 of 6 |

EXHIBIT A-6

 **Advocate Health Care**

**ADVOCATE CHRIST MEDICAL CENTER**
4440 West 95th Street
Oak Lawn, IL 60453

## Emergency Department Documentation

| | |
|---|---|
| **Document Name:** | ER Chart |
| **Result Date:** | 8/7/2009 12:17:00 PM |
| **Result Status:** | Unauth |

DIAGNOSIS (15:20 JS47)
FINAL: PRIMARY: Flank contusion.
Key:
  ALL=Larks, ERT, Angelina AP=Gruber, RN, Ann BK14=Kurtyka, ERT, Brad
  JAR=Redican, RN, Jeffrey JS47=Sinnott, RESIDENT, Jessica LC6=Clay, MD, Lamont
  RAM=Meck, RN, Rebecca

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
### for the
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| Peter Papaleo | ) | **D E C L A R A T I O N** |
| Plaintiff | ) | |
| | ) | Honorable Judge _____ |
| v | ) | |
| Deputy Joy, et al | ) | Magistrate Judge _____ |
| Defendants | ) | |
| | ) | |
| PETER PAPALEO | ) | Complaint Number: _____ |
| CCJ # 20070024222 | ) | |
| P.O. BOX 089002 | ) | |
| CHICAGO IL 60608 | ) | |

I, ___Joseph Hoban___, STATE OF MY OWN FREE WILL:
   (print your name)

That Peter Papaleo is my cellmate. When Pete came back from Cart on Aug 4th 2009 he was acting as if he was punch-drunk and had lacerations on his wrists and ankles. He was taken to the Cermak ER where he spent the night.

Since this attack Pete has had severe nightmares, they wake me up in the middle of the night. He sometimes yells at the top of his voice in these nightmares. When I ask him what was he dreaming about he tells me that he's being jumped, choked, killed. This is chronic.

I declare under penalty of perjury that the foregoing is true and correct.

Date ___Aug 20, 2009___   Signature _____
                                    Joseph Hoban
                                    CCJ # 20050086610

EXHIBIT C-1

# SHERIFF'S OFFICE OF COOK COUNTY
## INTERNAL AFFAIRS/INSPECTOR GENERAL
## COMPLAINT REGISTER

| Complainant Information | NAME (Last, First, M.I.): PAPALEO KENNETH R. | AGE: 69 | DATE OF BIRTH: 6-8-1940 | HOME #: (773) 625-0131 |
|---|---|---|---|---|
| | HOME ADDRESS: 3344 N. OPAL AVE. | CITY: CHICAGO | | WORK/OTHER #: ( ) RETIRED |
| | STATE: IL | ZIP CODE: 60634 | STATE I.D./D.L. #: 1405 1440 163P | STATE OF ISSUANCE: ILLINOIS |

**I HAVE BEEN NOTIFIED THAT, PURSUANT TO 50 ILCS 725/3.8(b), ANYONE FILING A COMPLAINT AGAINST A SWORN PEACE OFFICER MUST HAVE THE COMPLAINT SUPPORTED BY A SWORN AFFIDAVIT.**

**Complaint Information**

| DATE OF INCIDENT: 8-7-2009 | TIME OF INCIDENT: BETWEEN 10:30 A.M AND 11:30 AM |
|---|---|

LOCATION OF INCIDENT:
BRIDGEVIEW COURT HOUSE

PROVIDE NAMES, BADGE NUMBERS, SQUAD NUMBER or LICENSE PLATE, and/or PHYSICAL DESCRIPTION OF THE OFFICER AGAINST WHOM YOU WISH TO FILE A COMPLAINT:

A GUARD NAMED JOY AND A GUARD NAMED KESKA PLUS OTHER GUARDS. THERE WAS ANOTHER GUARD NAMED GOODMAN THAT WAS HOLLERING AT THE OTHER GUARDS DON'T HIT HIM OVER AND OVER.

**Witnesses**

ARE THERE ANY WITNESSES YOU WISH TO BE CONTACTED DURING THE INVESTIGATION? ☒ YES ☐ NO
IF YES, PROVIDE CONTACT INFORMATION.

| NAME | ADDRESS/CITY/STATE/ZIP | HOME PHONE # |
|---|---|---|
| PETER PAPALEO #2007 0024 222 | COOK COUNTY JAIL | |
| Division 10 | 2C | |
| | | |

**Narrative**

PROVIDE A FULL DETAILED ACCOUNT OF YOUR COMPLAINT AND THE NATURE OF THE INCIDENT.

MY SON PETER P. PAPALEO WHICH HE IS A MENTAL PATIENT HOLLERED TO THE JUDGE COLEEN McSWEENEY MOORE THAT THERE IS CORRUPTION GOING ON IN THIS COURT. AND SHE TOLD THE 2 GUARDS IN THE COURT ROOM TO REMOVE HIM AND THAT THEY WERE TO TAKE HIM TO CERMAK AND TO BE EVALUATED. BUT WHEN HE GOT OFF THE ELEVATOR THERE WERE 4 MORE GUARDS WAITING FOR HIM.

TURN OVER

☐ CONTINUED ON REVERSE

FOR OFFICE USE ONLY
DATE COMPLAINT RECEIVED: _____ RECEIVED BY: _____
IAD/IG #: _____

10

EXHIBIT C-2

THEY SLAMMED HIS HEAD AGAINST THE ELAVATOR DOOR AND KNOCKED HIM UNCONSCIOUS PUTTING HANDCUFFS ON HIM. ONE GUARD KNEEDED HIM IN THE RIBS AFTER HE CAME TO. THEY WERE TOSSING HIM AROUND REPEATEDLY AND ENDED BACK ON THE FLOOR DRAGGING HIM BY HIS HANDCUFFS IN WHICH THEY WERE SO TIGHT.

I HAVE TALKED TO MY SON PETER AND HE SAID HE WAS ALL BRUISED UP AND THAT HIS BACK RIBS ARE MOVING. HE HAS A LOT OF PAIN, HEAD AND BACK RIB PAINS, THEY TOOK HIM TO ADVOCATE HEALTH CARE. WELL ANYWAY HE NEVER MADE IT TO CERMAK LIKE THE JUDGE ORDERED. THIS IS A TERRIBLE THING TO DO TO A MENTAL PATIENT. THIS IS HIS 3RD BEATING ONE AT 1401 BUILDING IN MAYWOOD OR MAYBROOK, ONE AT THE COOK COUNTY JAIL ON RECIEVING DAY, AND NOW THIS ONE AT BRIDGEVIEW COURT HOUSE

Complaint Narrative (Continued)

# EXHIBIT C-3

PLEASE BE AWARE THAT IF YOU ALLEGE INJURIES AS A RESULT OF THIS INCIDENT, DUE TO FEDERAL PRIVACY LAWS ON THE RELEASE OF MEDICAL RECORDS, YOU MUST PROVIDE COPIES OF YOUR RELEVANT MEDICAL RECORDS REGARDING ANY EXAMINATION OR TREATMENT TO THE SHERIFF'S OFFICE INVESTIGATING UNIT TO BE MADE PART OF THE INVESTIGATION.

have read this statement that I have voluntarily made, consisting of __2__ pages, and I solemnly swear that the facts and llegations contained within are true and correct to the best of my knowledge. KENNETH R. PAPALEO

(Print Name)

Complainant's Signature: _Kenneth R. Papaleo_    Date: _8-18-2009_

tate of Illinois )
ounty of Cook )

Signed and sworn to before me on _8-18-09_  by _KENNETH R. PAPALEO_
(date)                                    (name of person making statement)

OFFICIAL SEAL
JUDY MICHELETTO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES 01/10/12

_Judy Micheletto_
(signature of notary public)

person commits PERJURY when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true. PERJURY IS A CLASS 3 FELONY.